Good morning, Your Honors, and may it please the Court, my name is Andre Charles Castang, I'm Assistant Attorney General for the State of Louisiana, and I'm here today representing Dakota DeMoss. The District Court erred when it denied Mr. DeMoss' qualified immunity-based motion to dismiss, and I'm here today to ask you to reverse that. This Court's rulings have been pretty consistent over a amount of time, and including one last month, that in the face of a qualified immunity-based motion to dismiss, the burden shifts to the court to overcome the assertion of that immunity defense. The particular issue we're raising here is not whether or not there was a violation of Mr. Greene's constitutional rights, I mean, that's pretty, I mean, it is, but it's what did my client have to do with that, and this Court's precedence in that in the face of a qualified immunity assertion that he's got, Ms. Greene has to come forward with sufficient specific facts about this particular defendant's specific personal conduct, and discovery's not appropriate until they get over that, or general discovery is not appropriate until they get over that hurdle. I think that, go ahead, sir. Your brief concedes that it's probably appropriate to allow Greene discovery, qualified immunity-related discovery, so. Yes, Your Honor. It's like you're arguing against yourself. I honestly don't think I had a winning argument without right dismissal, I mean, not under the facts of the case, not under the facts on the ground, I mean, I think it's in my opinion, the plaintiff is able to make more specific allegations about the individual defendant's conduct based on that video, it's just it came out after the district court ruled. I think it came out after I filed my original brief. It seems to me the premise of your argument is it will require us to reverse the denial of the motion to dismiss. Is that right? Yes, Your Honor. So, on what . . . where I get tripped up, I've read your cases on the backy line of cases, the Lyon-Boulos cases about, look, we need some targeted discovery here, I get all that. It seems like the premise of those cases that the district court did not or was unable to rule on qualified immunity, here the district court did rule on, denied the motion to dismiss, so on what basis would we reverse the district court? That's where I get hung up. I think the district court erred because it did . . . because the plaintiff did not satisfy her burden of pleading the specific facts against Mr. DeMoss about his specific conduct. We've got an incident that had lots of stuff going on and the allegations that, I mean, they're identical allegations, they're in separate paragraphs, but it's defendant one beat smothered and choked, defendant two beat smothered and choked, defendant three through seven. And there's not the kind of specific individualized allegations at all, the kind of specific facts, and you've got . . . you've got seven defendants. Do we have to accept as true that basically this group of officers just all ganged up on him? No, Your Honor, I don't think you have to accept that as true. I think the allegations don't have that kind of specific . . . aren't specific enough when you just say, A beats smothered and choked, B, C, D, E, without any kind of specific . . . What if it was just one officer with the identical allegation? It's a whole lot closer case because it's not . . . you don't have the issue of seven people there. It still might be a little bit of a problem with regard to pre- and post-handcuffing, but that is a different case because there's not the problem of who did what. It's either this individual did it or didn't. That would be a whole lot harder case for me to be up here on, but I think the fact that the plaintiff didn't carry her burden to rebut the qualified immunity defense is enough to reverse the district court's erroneous decision. My remedy argument is what happens next? I just did not think that I was entitled to stand up here and say outright dismissal, not under the circumstances in this case, particularly there's clearly some particular facts that have . . . Of course, I don't want to argue your own case for you either here or below, but if we did do what you're asking, which is to reverse and remand, you're saying there needs to be targeted discovery that goes to qualified immunity, is that right? Yes. What you would hope to, and again, you're the lawyer, what you would hope to establish I would expect is that your client didn't do anything here that . . . or should get qualified immunity when those targeted facts come out, I would think. I think my client is entitled under the qualified immunity jurisprudence to have more specific personal allegations about what he did because whether I'm . . . when you have . . . let's say with the bystander liability claim, A watched while the other six did this, B watched while the other six did this, it's just not everybody could have done everything and where were they when this happened? I mean, look at . . . That's very specific, but I mean it seems to me that the allegation that six stood there, including your client, and watched while this occurred is enough. Why isn't that enough? I would say, not to fight the hypo, but the . . . there are identical allegations involving each of the seven defendants that they all did this. What if they're all true? And they may be. They may be. That's my question. What if they're all true? I think the fact . . . there are not the specific factual allegations sufficient to overcome the qualified immunity defense in that broad, generic, something happened and they were all there. Are you saying that there's no duty to act? Is this a legal question or a fact question? This is a legal question about whether or not the allegations . . . Was there a duty on the officers who were alleged to stand . . . have stood by and watched all this, was there a duty on them to act or not? Are you saying there's no duty? Not at all, Your Honor. They had a duty not to be deliberately indifferent. So the allegations they stood there and watched, you're saying that doesn't, as a matter of law, grant qualified immunity. So I don't understand why that isn't enough. Because first you have the fact that they're standing there alone isn't enough, that they're at the incident somewhere. They had to have . . . I thought it was alleged that they affirmatively stood by and watched and did nothing, while clearly if you accept the allegations as true, constitutional rights were violated. He died. And I think I said at the outset . . . I know. So I don't understand why that isn't adequate. I think that because it does not meet the requirement that they plead specific facts about the specific conduct, and for instance, the allegation just says they watched. It doesn't say they watched and ignored. It doesn't say anything about where . . . and the targeted discovery that I think is certainly quite possible with regard to getting the video, I think as Ms. Green's filings talk about, there's some police reports, use of force reports that they don't have that they can obtain. That would probably be appropriate. Is there any evidence that DeMoss wasn't the one that tasered Mr. Green three times? There's no evidence either way, Your Honor. So the answer to your question is there is no affirmative evidence that it wasn't him,  What does the evidence show? That anyone other than your client tased him? They do not affirmatively allege that it was . . . they don't affirmatively allege who it was. So they just . . . What about the video? The . . . I think the video does show who, at least partially, and I think that's available and I think that would certainly be well within the range of the limited targeted discovery that the district court could slash should allow. From the perspective of qualified immunity, I mean, what is the difference between us doing what you're asking, which is to reverse remand for limited discovery that's targeted to qualified immunity? What's the difference between that and just letting the case go forward as it is and having facts come out and then I'm assuming you would move for summary judgment if it were warranted on qualified immunity? So what's the difference between those two courses of action from your perspective? I think it . . . certainly the general discovery in this case is going to be broad, wide, and deep. I mean, there are lots of allegations about all kinds of things. They've got a, I believe it's a products liability claim in here about the unnamed, as of yet unnamed, manufacturer of the taser. There are going to be lots of dueling, probably medical experts, probably use of force, accident reconstruction, all of that. That's going to be broad, wide, and deep, and it may be possible, you know, we don't know. Not everybody could have hit him. Not everybody could have kicked him, and then it's just bystander liability claims, perhaps on that one, but that would narrow the potential claims and . . . So it sounds like what you're saying, I appreciate what you're saying, it sounds like what you're saying is that general discovery would create too many burdens on your client and that would defeat the purpose of qualified immunity. Exactly, Your Honor. And I see my time is up, and co-defendants have some comments, some argument to make as well. Thank you. Good morning, Your Honors. I am Brian Smith. I'm with the Kasten and Parrish firm in Shreveport. I'm honored to be here. I represent three state troopers in this case, Captain Peters, Lieutenant Clary, and Sergeant McElroy, obviously experienced troopers based on their rank. They are, I think, in a different category than my colleague's client because in the complaint it is alleged that my clients arrived shortly thereafter, which is shortly thereafter DeMoss and Hollingsworth got there. So the question is, what is shortly thereafter, and how much of the alleged . . . they're all accused of doing exactly the same things. How much of that occurred after my clients got there and they were involved, and how much occurred before and they were not present, and more particularly with regard to the bystander liability issue, I think it's important because I think there needs to be allegations that would specifically assert against each of my clients that each of them knew another had a reasonable opportunity to prevent the harm and chose not to do so. I believe that would require that they specifically allege against each of my clients that they were in close enough proximity to have seen it and to have been able to do something about it and chose not to do so. What do they allege they saw when they got there? What's their position? Did they see the . . . The allegation and the complaint is that they all saw . . . they each saw the others being . . . What's your client's position as to what they saw when they got there? What was the event that was going on, and that from that point, you can tell what happened before if they didn't see . . . It's my understanding from the facts beyond the scope of the complaint that he was already handcuffed when my three troopers got there. But . . . Did they witness the tasing? Ma'am? Did they witness him being tased three times? I don't believe so, no. Most of the alleged activity occurred, to my knowledge, before they got there, and they don't know who did what. But . . . Are you asking for a different remedy than counsel for DeMoss here? I mean, are you making a different argument as to what we ought to do if we agree with you? Well, I mean, I would love to tell you that we need to have a reversal, at least on the bystander liability, because of the different situation my clients are in and the specific elements that need to be alleged. But I would agree that we may be looking at limited discovery and a summary judgment motion down the road. I mean, I'm here . . . I'd love to have a dismissal of at least the bystander liability case, but . . . And I think that's probably my best argument because of the particular elements of that claim and the fact that they got there after. And a plaintiff quoted the magistrate judge as saying that, you know, that they were there and didn't do anything. But there are no specific allegations to indicate they were there at the time events occurred in close enough proximity to do something about it, because we've got seven law enforcement officers and arriving at a scene at different . . . You're saying the allegations as to your clients with respect to bystander liability are not sufficient, and so the district court should have granted a motion to dismiss . . . Yes, sir. . . . based on qualified . . . Yes, sir. I'd love to say the same about excessive force, but I'm not going to waste your time on that. I mean, I know that's a pretty strong allegation on that.     Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Good morning, Your Honor. So I've got one minute, so I'll try to be brief. So the one thing I would add to all that, I agree with what they said, but the one thing I would add is their allegations have got to be plausible. Is it plausible that . . . Do we have jurisdiction to review that? Sir? Do we have jurisdiction to review . . . I think absolutely. Yes, sir. That's one of the parts of qualified immunity. I know, but we're on an interlocutory appeal, right? Right. I'm not sure if we have jurisdiction.   Yes, sir. And is it plausible that nine officers beats Mother Teresa? Yes, sir. And is it plausible that nine officers beats Mother Teresa? Yes, sir. I can tell you my guy didn't beat Mother anybody. And so that's one of the things that we'd like for the Court to look at is what they've alleged plausible. And that's all we would add to that. Thank you. Good morning, Your Honors. Andrew Lyonsberg for the apollye. Taylor Greene. I want to start with that last point about plausibility and jurisdiction. The Court does not have jurisdiction to entertain an argument along the lines of it's not factually plausible that the allegations in the complaint happened that way. And that's the Ramirez v. Escajeda case. I think that case is pretty clear. Under that case in Iqbal, the Court has jurisdiction to hear an argument that argues about which allegations are properly pleaded and whether those allegations plausibly plead a legal claim to relief. But . . . We have jurisdiction to review whether the allegations with respect to excessive force or bystander liability are so conclusory that they simply fail to state a claim? I believe that that is within this Court's jurisdiction under Iqbal. Let me ask you this. So, I mean, I've read the complaint, the live complaint. Imagine that instead of breaking out each one of these allegations as to each officer, the complaint simply grouped all the officers together in one paragraph and said, all these officers did all this. Is that sufficient to state a claim of excessive force or bystander liability? Your Honor, I think the distinction, the hypothetical, is the critical distinction here. So a true collective allegation would be in a case against multiple defendants, A, B, and C, an allegation in the form of the defendants, without specifying which ones, did X, Y, and Z. And what the cases say is that the problem with that is a notice problem. So if I'm Defendant A, from that allegation, I can't tell whether I'm being accused of doing just X and nothing else, Y and Z but nothing else, or some other combination. Right. As I read our cases, I don't know what cases you're thinking of, but as I read our cases like MEDOR's, it's just not sufficient to do that for the reasons that you just said. Doesn't put anyone on notice of what they actually did, and we have to consider qualified immunity individually, not collectively. And as I understand it, even at the motion to dismiss stage. Yes, Your Honor, but the critical difference is that this complaint is not pleaded that way. It's pleaded as, you know, to use the same scheme, it's pleaded as Defendant X, or Defendant A rather, did all of X, Y, and Z. Defendant B also did all of X, Y, and Z. Why isn't that a difference in form and not in substance? Because all you did, I don't know if you did this, but let's hypothetically, all you did was take the inadequate collective allegation and break it out into individual paragraphs using exactly the same language. Your Honor, it's because if that collective allegation were inadequate, the inadequacy would be the very fact that it doesn't specify which defendant did what. Again, if I'm Defendant A, I don't know from a collective allegation whether I'm accused of, you know, which of the acts I'm accused of doing, whereas in this complaint, each defendant was both beat, smothered, and choked green, despite the fact that he had surrendered and was not resistant. And I want to also talk, Your Honors, about this idea that there's a heightened pleading standard for qualified immunity. This Court could not have been clearer in Arnold and Anderson that that is simply not the case. Of course, it is the law in the circuit that a plaintiff has to plead facts that, if true, would defeat qualified immunity, but there is no requirement that those facts be pleaded with anything more than the, quote, minimal specificity required by Twombly and Iqbal. What, suppose we leave the case where it is. Each of the defendants can go back and file a motion for summary judgment, swear out an affidavit, I did not beat, choke, or smother Mr. Green. Yes, Your Honor. So what happens then? Are you going to say I'm entitled to discovery, or what's your response to that? Well, I think if the case moves forward, then yes, we would be entitled to discovery. We'd be looking at the video and other discoverable investigative materials, and the defendants would be able to assert qualified immunity again at that stage. And so there would be— But would you say, I want discovery on everything before we get a summary judgment, or they're entitled to limited summary judgment on qualified—I mean, limited discovery on qualified immunity? I mean— Well, I think, as Judge Duncombe was discussing, that line of cases applies when the Court is unable to rule on the qualified immunity question, whereas here, the Court was able to rule on these allegations about qualified immunity. That gets you past the pleading stage. I'm just saying, assuming we do not vacate the district court's judgment, the case is in the district court, correct? So are you going to object to targeted discovery, assuming they file a summary judgment motion tomorrow? Are you going to object to qualified immunity, targeted discovery, or are you going to insist that full discovery occur before any summary judgment motion is considered? I'm not sure that those, as a practical matter, are that different in this case, given that both liability and qualified immunity, the relevant facts are going to be focused on, you know, what happened that night and— Well, he talked about products, liability, and other broad and deep discovery issues that don't affect each individual defendant. What's your response to that? I don't think that these defendants' qualified immunity interests are implicated by discovery of, you know, products, liability claims against an unknown manufacturer of a taser. But if this Court were to remand for qualified immunity-specific discovery, you know, discovery that goes to the facts of what happened that night, who did what, who said what to whom afterwards about it, I don't think we'd object to that. I think that would be perfectly consistent with— What if we don't remand for that purpose? Are you going to object to it? I'm sorry, Your Honor? If we don't remand for that specific purpose, are you going to object to targeted, limited discovery up front as to qualified immunity? I don't believe so, Your Honor. I think that's, you know, our interests here are in figuring out what happened and moving the case forward on that basis, not imposing discovery that's unrelated to the court issues here. Yeah, I mean, because just from a common-sense point of view, I mean, you know that an officer's interest in qualified immunity extends not just to ultimate liability but to the burdens of discovery and trial. So I think you can imagine, let's say hypothetically, maybe all these officers did that. That's certainly possible. Maybe all of them are, you have a claim against all of them. That is certainly possible. But it's also possible that one or more of them didn't do anything. Now those officers, as I understand qualified immunity, the way it's supposed to work is we're supposed to figure out who those officers are and get them out of here and let the thing go. And I think that's, you know, that's a, I understand the gist of the Chief's comments here. Yes, Your Honor, and we, I want to be clear, we have no objection to that. You know, an officer can file an affidavit that said I did nothing. We would be able to then look at the video and we would contest that. But if it is true that one of the officers did nothing and, you know, for example, was not there to watch the other officers beating Mr. Greene, then of course that officer would be dismissed from the case. But you still have a bystander allegation against that officer. Yes, Your Honor, I'm talking about in a situation where it became clear from the facts after discovery that the officer not only didn't personally beat Mr. Greene but also, you know, the elements of the bystander claim were also not satisfied. Your Honor, I think, you know, given the positions of the defendants here, I think the way forward is somewhat clear. I think that as a practical matter, it's this Court's decision allowing that there's going to be some discovery, it's not as a practical matter to make that much difference whether, you know, how this Court decides the case. But I do think that this complaint is more than sufficient on its own factual allegations. And as I said, the collective allegations issue is, I think, not implicated here because of the notice that the complaint gave. I mean, I think, to be perfectly frank, the conundrum that you must find yourself in is that I'm not sure how you could have known what happened, right? I'm not even sure where some of the facts that are pled in the complaint come from with respect to what the decedent was saying. I don't know. But I can understand how you just don't know what happened because you don't have the information. I get that. That's, I mean, I get that. It goes to a question of whether the pleading is sufficient at this point and, you know, we have these cases that talk about targeted discovery and just trying to figure out how all that works. And I think Twombly and Iqbal have to be, you know, sensitive to that fact. Twombly and Iqbal themselves say that they're context-specific and, you know, involve a measure of common sense and judicial experience. And I think part of that is, you know, when a plaintiff has no access to the specific facts because of the wrongful acts alleged in the complaint, there has to be some allowance to let that proceeding go forward rather than saying, you know, you're in a catch-22 here. And so I think it's more than appropriate to just affirm the district court and then we can move forward. And I have some time left, but unless Your Honors have any more questions, I'll rest on the briefs. Thank you. We have your argument. Thank you, Your Honor. Mr. Castaing? Yes, Your Honors. With regard to the pleading issue, a couple of things. The requirement of the sufficient specific facts comes up because we raised qualified immunity. That's not part of his initial burden on his complaint. We haven't asserted that. He doesn't have to anticipate that we're going to raise qualified immunity and plead sufficient. Those kind of qualified immunity sufficient facts, you know, as an anticipatory matter in his complaint. But once we raised it, that burden fell upon them to make those specific allegations. The, you know, and I think my colleagues, you know, made a point, good point about why it's necessary in this case to show the separate allegations. You know, they obviously have a little better, a little better argument with regard to people who showed up later, but it's at least an example of different people, certainly different people do different things, whether it's the tasing, whether it's the standing by, whether it's not just being there, but having, at least being in a position where they could have seen something from which they got that actual knowledge and whether or not they took those reasonable steps to avert the harm. I would say— When a plaintiff in this situation is in the position of saying, okay, we know something horrible very likely happened, but we have no way of knowing which officer did what or whether some officer did nothing and some officer was taking the lead, what is the plaintiff supposed to do with respect to pleading sufficiently? I think in response to our motion for summary judgment, they are allowed to request the targeted discovery that I'm talking about, and I think the district court certainly has great discretion, as it does on all discovery matters, as to what that targeted discovery is. The district court just has to make determinations that it is, in fact, targeted to the particular assertion of immunity. Right. But you don't think the district court was supposed to grant your motion to dismiss, right? Correct. You just said in response to a motion for summary judgment. I'm sorry. Excuse me, Your Honor, I misspoke. Well, I don't think you did, actually. I was unfortunately mentioned in Tamara's case that I have with you. Oh, right, right. In response to the motion to dismiss, given our assertion that the facts were not sufficiently specific to overcome qualified immunity, that's the point where the plaintiff can request that targeted discovery. And quite frankly, given the situation, that's why I'm not asking for dismissal, because this is a situation where there's nobody, unfortunately, there's no one on his side to testify about what happened that day, and that's just the very unfortunate situation. Well, there were seven people there, and some may decide to testify as to what they saw. Yes, Your Honor. Once discovery begins, there's going to be some finger-pointing, and allegations will be pretty strong, I would imagine. I think certainly those possibilities would exist in any situation, and I think, as you notice, we've got different counsel for different people who are appearing here today. I mean, the facts need to come out, and the question is, how do you do that procedurally, consistent with qualified immunity, and all that? I think narrowly tailored discovery would include getting the video, and using the evidence from the video. Narrowly tailored discovery could include getting the types of police reports and use of force reports that they mentioned in their pleadings that they attempted outside of this lawsuit to get, but that's different from having the power of federal court behind you to get those things. So that's, there are, you know, just a public records request, or writing a letter asking for it, it's not as powerful as a federal subpoena. So they have some very specific, I don't mean to use the word simple, but they're readily identifiable, and relatively easily producible, that should certainly go a long way to allow them to make those kinds of allegations. And unless the court has any questions, I see my time is up, and I appreciate the court's indulgence this morning. Thank you, counsel. We have your argument.